UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Alston, Chafin and Malveaux
Argued at Salem, Virginia


RALPH CURTIS MOORE

                                MEMORANDUM OPINION[*] BY
v.       Record No. 1167-17-3          JUDGE TERESA M. CHAFIN
                                  MARCH 13, 2018

DICKENSON COUNTY DEPARTMENT OF
  SOCIAL SERVICES


FROM THE CIRCUIT COURT OF DICKENSON COUNTY
Henry A. Vanover, Judge

J. Brent Fleming (Fleming Law Office, PC, on brief), for appellant.

Susan J. Wood; Jeffery L. Elkins, Guardian *ad litem* for the minor
child (Greg Baker, Attorneys at Law, PLLC; Jeff Elkins Law Firm,
PC, on brief), for appellee.


On June 20, 2017, the Circuit Court of Dickenson County ("circuit court") terminated

Ralph Curtis Moore's residual parental rights pertaining to his daughter, B. On appeal, Moore

contends that the circuit court erred by admitting a video showing his arrest on the night of

December 5, 2016 into evidence. He also argues that the circuit court erred by terminating his

parental rights pursuant to Code § 16.1-283(C)(2) due to his failure to remedy the conditions that

led to B.'s continued placement in foster care within a reasonable time. For the reasons that

follow, we affirm the circuit court's decision.

## I.  BACKGROUND

"When reviewing a [circuit] court's decision on appeal, we view the evidence in the light

most favorable to the prevailing party, granting it the benefit of any reasonable inferences."

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Boatright v. Wise Cty. Dep't of Soc. Servs., 64 Va. App. 71, 76, 764 S.E.2d 724, 727 (2014) (quoting Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003)). So viewed, the evidence is as follows.

B. was born prematurely on May 23, 2016. Her mother had exposed her to controlled substances before her birth. Due to her mother's continued substance abuse, the Dickenson County Department of Social Services ("DSS") obtained custody of B. on June 7, 2016.[1] At the time, the identity of B.'s father was not confirmed.

On August 19, 2016, DNA testing established that Moore was B.'s father. B. could not be immediately placed with Moore, however, because a drug screen indicated that he had used marijuana and suboxone without a prescription. Moore also did not have a suitable home for B. Although Moore's home was physically adequate, Moore lived with his father, who had been convicted of distribution offenses that prevented DSS from placing B. in the home.[2]

DSS designed a plan to help Moore become a safe and suitable parent for B. DSS offered Moore psychological evaluations, moral reconation therapy ("MRT"), parenting classes, and supervised visitation with B. Moore completed the psychological evaluations and parenting classes, and he started the MRT program. He also regularly attended his scheduled visits with B., and obtained employment at a grocery store.

Moore completed the required parenting classes on December 5, 2016, and he drank alcohol with a friend from the class that evening to celebrate. Moore became intoxicated and belligerent. At some point, Moore got into a fight with his father and the police were called to their home. When the police officers arrived, Moore threw a television and a space heater at

---

[1] B.'s mother later agreed to the termination of her parental rights.

[2] Moore's sister, who was the subject of a prior founded child protective services complaint, also lived in the home. She moved out of the residence, however, before Moore's residual parental rights were terminated.

them.  One of the officers had to use his taser to subdue Moore.  During his encounter with the police officers, Moore spontaneously stated, "I will guarantee you that I'll kill that baby and I will enjoy the death of that baby."  B. was the only baby in Moore's life at this time.  Moore was arrested that evening and charged with assault and battery of a family member and two counts of assault and battery of a law enforcement officer.

In response to Moore's threats to kill a baby, DSS requested the Dickenson County Juvenile and Domestic Relations District Court ("JDR court") to suspend his visitation with B. On December 14, 2016, the JDR court suspended Moore's visitation and ordered him to comply with additional services to address his anger and alcohol problems.  Although DSS attempted to contact Moore on multiple occasions to set up additional services, their efforts were unsuccessful.  Moore eventually contacted DSS regarding the additional services on January 6, 2017, and DSS informed him that he needed to complete anger management classes and attend Alcoholics Anonymous ("AA") meetings weekly.

Moore attended an initial anger management class on January 30, 2017.  He failed to attend additional classes, and he was ultimately discharged from the anger management program. Moore only sporadically attended AA meetings.  He also lost his job due to his new criminal charges.

On February 15, 2017, DSS filed a petition in the JDR court requesting the termination of Moore's residual parental rights regarding B.  The JDR court granted the petition and terminated Moore's rights on March 31, 2017.  Moore appealed the JDR court's decision, and a *de novo* hearing was held concerning the matter in the circuit court on May 12, 2017.

At the circuit court hearing, DSS attempted to introduce a video from a police officer's body camera showing the events that occurred prior to and during Moore's arrest on December 5, 2016.  Moore objected to the admission of the video.  Moore argued that the video was

irrelevant because a child was not present at Moore's home when he was arrested or otherwise involved in the incident. The circuit court disagreed with Moore, admitted the video into evidence, and viewed it during the hearing.

At the hearing, Moore testified that he completed the MRT program on May 3, 2017. He also presented documentation confirming that he had attended six AA meetings since January. Moore admitted, however, that he still lived with his father. Although Moore testified that he was willing to move to a new residence, he did not have any specific plans regarding his relocation. Moore also admitted that he did not have a job or a valid driver's license and that he had incurred new charges for driving with a suspended license, and driving without insurance, vehicle registration, improper tags, and a valid inspection sticker. Moore acknowledged that these charges and his previous charges for the assault and battery of law enforcement officers were still pending and that he could face incarceration if he was convicted of these offenses.

At the conclusion of evidence, the circuit court terminated Moore's residual parental rights pertaining to B. pursuant to Code § 16.1-283(C)(2). The circuit court entered an order memorializing its decision on June 20, 2017, and Moore appealed the circuit court's decision to this Court.

## II. ANALYSIS

On appeal, Moore contends that the body camera video of his arrest on December 5, 2016 should not have been admitted into evidence or considered by the circuit court. Moore also contends that the circuit court erred by terminating his parental rights pursuant to Code § 16.1-283(C)(2) because he was entitled to receive more time to remedy the conditions that contributed to B.'s continued placement in foster care. Upon review, we conclude that the circuit court did not err by considering the video at issue or admitting it into evidence. We further

conclude that Moore's additional arguments regarding the termination of his parental rights are procedurally defaulted.

### A. THE DECEMBER 5, 2016 BODY CAMERA VIDEO WAS RELEVANT EVIDENCE

Moore argues that the body camera video showing the events that occurred prior to and during his arrest on December 5, 2016 should not have been admitted into evidence because it was irrelevant to the termination proceedings.[3] We disagree.

We begin our analysis by acknowledging that "the admissibility of evidence is within the broad discretion of the [circuit] court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 132, 409 S.E.2d 460, 465 (1991) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)). Evidence is relevant when it has "any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Rule 2:401. Stated alternatively, "[e]vidence is relevant if it tends to prove or disprove, or is pertinent to, matters in issue," Seaton v. Commonwealth, 42 Va. App. 739, 752, 595 S.E.2d 9, 15 (2004) (quoting Clay v. Commonwealth, 262 Va. 253, 257, 546 S.E.2d 728, 730 (2001)), or when it "'tends to cast any light' on any material point." Id. (quoting Ricks v. Commonwealth, 39 Va. App. 330, 334, 573 S.E.2d 266, 268 (2002)).

Code § 16.1-283(C)(2) permits a court to terminate a parent's residual parental rights when such a termination is in the best interests of the child at issue and:

> [t]he parent . . . , without good cause, [has] been unwilling or
> unable within a reasonable period of time not to exceed 12 months
> from the date the child was placed in foster care to remedy
> substantially the conditions which led to or required continuation
> of the child's foster care placement, notwithstanding the

---

[3] While Moore also contends that the admission of the video at issue was unduly prejudicial, he did not present this argument to the circuit court. Accordingly, we will not consider this argument on appeal. See Rule 5A:18; Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 315, 746 S.E.2d 509, 519 (2013).

reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Although no children were present at Moore's home when he was arrested and his offenses did not directly involve a child, the video of Moore's arrest was highly relevant in the termination proceedings. The video documented Moore's criminal conduct and general instability, conditions which at least partially led to the continuation of B.'s placement in foster care. The events depicted in the video also took place in the home where Moore intended for B. to live, and reflected his ability to safely parent B. As the video at issue was both relevant and highly probative, the circuit court did not err by admitting it into evidence and considering it during the termination hearing.[4]

## B. MOORE'S ADDITIONAL ARGUMENTS ARE PROCEDURALLY DEFAULTED AND NO MISCARRIAGE OF JUSTICE HAS OCCURRED IN THIS CASE

On appeal, Moore argues that he was entitled to receive additional time to remedy the conditions that led to B.'s continued placement in foster care. Specifically, he contends that he had a due process right to remedy the conditions at issue by the target date of completion listed on B.'s foster care plan.[5] Alternatively, Moore argues that he had until June 7, 2017, the end of

---

[4] While we conclude that the circuit court did not err by admitting the video at issue into evidence, we note that Officer Christopher Yates testified at the termination hearing about the events that occurred prior to and during Moore's arrest. Although Moore assigned error to the circuit court's admission of the video into evidence, he did not assign error to the circuit court's decision to overrule his objection to Yates's testimony. Due to the testimony provided by Yates describing Moore's arrest, the admission of the video into evidence would have constituted, at most, harmless error. See Code § 8.01-678; Greenway v. Commonwealth, 254 Va. 147, 154, 487 S.E.2d 224, 228 (1997) (The "[i]mproper admission of evidence does not create reversible error when it is merely cumulative of other competent evidence properly admitted.").

[5] In his brief, Moore contends that B.'s foster care plan stated target completion dates of March 14, 2016 and March 31, 2016. As B. was not born until May 23, 2016, we conclude that these references are erroneous. We note, however, that B.'s initial foster care plan stated a target completion date of June 7, 2017.

the twelve-month period beginning when B. was initially placed in foster care, to remedy the conditions at issue pursuant to Code § 16.1-283(C)(2).

Although Moore argued that he had substantially complied with the terms of B.'s foster care plan and generally requested additional time to remedy the conditions requiring her continued placement in foster care, he did not argue that he had a due process or statutory right to receive more time at the termination hearing. Rather, Moore argued that DSS "short-changed [him] two months," and that his "timeline started August the 19th," the date that his paternity was established. Moore then asked the circuit court to "give [him] the two additional months that he missed . . . since he was not listed as the father until two months later." Moore never argued that he was entitled to receive additional time to remedy the conditions requiring B.'s continued placement in foster care pursuant to the completion date of her foster care plan or any specific statute.

Moore acknowledges that he failed to present these appellate arguments to the circuit court. He contends, however, that a miscarriage of justice has occurred in this case, and he requests that we apply the ends of justice exception to Rule 5A:18 to address the merits of his arguments.

Rule 5A:18 states, in pertinent part, "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." "The ends of justice exception is narrow and is to be used sparingly," and applies only in the extraordinary situation where a miscarriage of justice has occurred. Redman v. Commonwealth, 25 Va. App. 215, 220, 487 S.E.2d 289, 272 (1997) (quoting Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 10 (1989)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." Brittle v. Commonwealth, 54

Va. App. 505, 514, 680 S.E.2d 335, 340 (2009). In order to avail oneself of the ends of justice exception, an appellant must affirmatively show that an alleged error was "clear, substantial and material." Lecky v. Reed, 20 Va. App. 306, 313, 456 S.E.2d 538, 541 (1995) (quoting Brown, 8 Va. App. at 132, 380 S.E.2d at 11).

In the present case, Moore has failed to provide any authority specifically supporting his appellate arguments. While Moore has cited authority generally establishing that a parent is entitled to procedural due process prior to the termination of his or her parental rights, see, e.g., Wright v. Alexandria Div. of Soc. Servs., 16 Va. App. 821, 829, 433 S.E.2d 500, 505 (1993), and that due process requires strict compliance with the statutory scheme governing termination proceedings, see, e.g., Rader v. Montgomery Cty. Dep't of Soc. Servs., 5 Va. App. 523, 526, 365 S.E.2d 234, 235-36 (1988), he has not cited any authority affirmatively establishing that he had a due process or statutory right to receive additional time to remedy the conditions that led to B.'s continued placement in foster care. In the absence of specific authority supporting his arguments, Moore has failed to establish that clear error occurred in this case.

Moreover, the facts of this case established that the alleged error was, at most, insubstantial. Although Moore argues that he should have had until at least June 7, 2017 to remedy the conditions requiring B.'s continued placement in foster care, he had a significant amount of time to remedy the conditions at issue before the circuit court terminated his parental rights. The circuit court determined that Moore's parental rights should be terminated at the conclusion of the hearing held on May 12, 2017,[6] less than one month before the earliest permissible termination date alleged by Moore. At this time, B. had been in foster care for over eleven months.

---

[6] We note that the circuit court did not enter an order terminating Moore's residual parental rights pertaining to B. until June 20, 2017, over one year after B. was initially placed in foster care.

Additionally, the evidence presented in this case affirmatively established that Moore had failed to remedy the conditions requiring B.'s continued placement in foster care. Despite the services offered by DSS, Moore's circumstances deteriorated. On the day that Moore completed parenting classes, he threatened to kill a baby and assaulted two police officers. As a result of his actions, Moore's visitation with B. was suspended and he had no further contact with her. Moore was also charged with two felony offenses for the assault and battery of law enforcement officers. As these charges and other misdemeanor charges were pending on the date of the termination hearing, Moore's continued liberty and future ability to care for B. were uncertain.

While DSS offered Moore additional services to help him address the issues underlying the events that led to his arrest, Moore did not take advantage of these services. He only attended one anger management class, and he was eventually discharged from the anger management program due to his nonattendance. Although Moore admitted that he had a long-standing alcohol problem, he only sporadically attended AA meetings. Moore attended six AA meetings over the five-month period when he was required to attend those meetings weekly.

At the time of the termination hearing, Moore had failed to obtain a suitable home for B. He still lived with his father, who had been convicted of distribution offenses that prevented B. from being placed in the home. While Moore expressed a willingness to relocate if he obtained custody of B., he had no concrete plan to obtain new housing. He was also unemployed, and he did not have a valid driver's license.

Under these circumstances, we conclude that the termination of Moore's residual parental rights was not a miscarriage of justice. The evidence presented in this case established that Moore failed to remedy the conditions that led to B.'s continued placement in foster care within a reasonable time despite the services offered to him by DSS, and that the termination of his

residual parental rights was in B.'s best interests.  Therefore, we decline to apply the ends of justice exception to address the merits of Moore's arguments.[7]

### III.  CONCLUSION

For the reasons stated, we affirm the circuit court's decision.

<u>Affirmed.</u>

---

[7] As Rule 5A:18 bars the consideration of Moore's arguments on appeal and the ends of justice exception to that rule does not apply under the facts of this case, we express no opinion regarding the substance of Moore's defaulted arguments.